IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY EVANS and DON WESTON DORRELL, Individually and as Representatives of a Class, § § § § | | |
| Plaintiffs, § § | | |
| v. § § | CIVIL ACTION NO. H-19-3555 | |
| ENTERPRISE PRODUCTS PARTNERS, LP; OILTANKING PARTNERS, LP; and CENTERPOINT ENERGY, § § § § § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mary Evans and Don Weston Dorrell, individually and as representatives of a class (collectively, "Plaintiffs") sued defendants Enterprise Products Partners, LP ("Enterprise"), Oiltanking Partners, LP ("Oiltanking"), and CenterPoint Energy Houston Electric, LLC ("CenterPoint") (collectively, "Defendants") in the 165th District Court of Harris County, Texas.[1] Enterprise timely removed based on the Class Action Fairness Act of 2005 ("CAFA").[2] Pending before the court are Plaintiffs Mary Evans and

---

[1]Defendant Enterprise Products Partners, LP's Notice of Removal ("Notice of Removal"), Docket Entry No. 1, p. 1; Plaintiffs' Original Complaint – Class Action Petition ("Original Complaint"), Exhibit B to Notice of Removal, Docket Entry No. 1-2, p. 2. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Notice of Removal, Docket Entry No. 1, p. 2.

Don Weston Dorrell's, Individually and as Representatives of a Class, Motion to Remand (Docket Entry No. 20) ("Plaintiffs' Motion to Remand"); Defendant CenterPoint Energy Houston Electric, LLC's FRCP 12(b)(6) Motion to Dismiss ("CenterPoint's MTD") (Docket Entry No. 2); and Defendants Enterprise Products Partners, LP and Oiltanking Partners, LP's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Enterprise and Oiltanking's MTD") (Docket Entry No. 3). For the reasons stated below, Plaintiffs' Motion to Remand will be granted, and Defendants' motions to dismiss will be denied as moot.

## I. Alleged Facts and Procedural Background

Enterprise and Oiltanking are partnerships involved in the oil logistics and storage business.[3] In 2014 Oiltanking began constructing oil pipelines in Channelview, Texas, on a pipeline easement owned by CenterPoint.[4] Enterprise purchased a controlling interest in Oiltanking in October of 2014 and became partial owner of the pipelines, the first of which was completed in 2015.[5] During construction Enterprise and Oiltanking compacted excavated soil on top of the pipeline, creating a topsoil with a large amount of hardened clay that did not match the site's original, permeable

---

[3]Original Complaint, Exhibit B to Notice of Removal, Docket Entry No. 1-2, p. 6 ¶ 19.

[4]Id. at 5 ¶ 15, 7 ¶ 20.

[5]Id. at 6 ¶ 19, 7 ¶ 20.

topsoil.⁶ Plaintiffs allege that the new topsoil diverts surface water and has caused significant flooding in the areas on either side of the pipeline easement.⁷ Plaintiffs allege that this flooding has caused direct damage to some properties and reduced the value of other properties in the area.⁸

On August 19, 2019, Plaintiffs brought a class action against Defendants in state court alleging negligence, trespass, nuisance, and a violation of the Texas Water Code.⁹ Plaintiffs defined the class as those who within two years prior to the filing owned property that suffered flood damage or diminution of value in an area in or around Channelview, Texas, bounded by Interstate 10, Texas State Highway Beltway 8, Moore Road, and Sheldon Road.¹⁰ Enterprise removed the case to this court on the basis of diversity jurisdiction under CAFA on September 20, 2019.¹¹ Defendants filed motions to dismiss the action for failure to state a claim under Rule 12(b)(6) on September 27, 2019.¹² Plaintiffs filed their Motion to Remand on October 18, 2019, seeking remand of the action

---

⁶Id. at 8-9 ¶¶ 22-25, 10 ¶ 28.

⁷Id. at 9 ¶ 26.

⁸Id. at 10 ¶ 29.

⁹Id. at 2 ¶ 1.

¹⁰Id. at 10 ¶ 32.

¹¹Notice of Removal, Docket Entry No. 1, p. 2.

¹²Centerpoint's MTD, Docket Entry No. 2; Enterprise and Oiltanking's MTD, Docket Entry No. 3.

to state court under CAFA's mandatory and discretionary remand provisions for class actions that are genuinely local in nature.[13] Defendants filed responses to the Motion to Remand on November 8, 2019.[14] Plaintiffs filed their reply on November 15, 2019.[15] Enterprise and Oiltanking filed a surreply on November 22, 2019.[16]

## II. <u>Law and Analysis</u>

CAFA allows defendants to remove class actions to federal court that involve (1) a class of over one hundred members, (2) an amount in controversy exceeding $5,000,000, (3) primary defendants other than states, state officials, or other government entities, and (4) diversity of state citizenship between at least one class plaintiff and at least one defendant. 28 U.S.C. §§ 1332(d)(2), (d)(5). But the court's jurisdiction under CAFA is subject to three exceptions. If greater than two-thirds of plaintiff class members are citizens of the state in which the action was

---

[13]Plaintiffs' Motion to Remand, Docket Entry No. 20, pp. 5, 10.

[14]Defendants Enterprise Products Partners, LP and Oiltanking Partners, LP's Response in Opposition to Plaintiffs' Motion to Remand ("Enterprise and Oiltanking's Response"), Docket Entry No. 27; Defendant CenterPoint Energy Houston Electric, LLC's Response to Plaintiffs' Motion to Remand, Docket Entry No. 28.

[15]Plaintiffs Mary Evans and Don Weston Dorrell's, Individually and as Representatives of a Class, Reply to Defendants' Response to Plaintiffs' Motion to Remand ("Plaintiffs' Reply"), Docket Entry No. 33.

[16]Defendants Enterprise Products Parnters, LP and Oiltanking Partners, LP's Surreply in Opposition to Plaintiffs' Motion to Remand ("Enterprise and Oiltanking's Surreply"), Docket Entry No. 37.

originally filed, the mandatory local controversy or home-state exceptions may apply. Id. § 1332(d)(4); Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 485 F.3d 804, 810 (5th Cir. 2007) ("Preston II"). If greater than one-third but less than two-thirds of class plaintiffs are citizens of the state where the action was filed, the court has discretion to decline to exercise jurisdiction in the interest of justice. Id. § 1332(d)(3).

Plaintiffs contend that remand is appropriate under the mandatory or discretionary remand provisions. Defendants oppose remand and primarily argue that Plaintiffs have not provided sufficient evidence to prove any proposed class members are citizens of Texas. To prove citizenship, Plaintiffs provide evidence in the form of property ownership, address lists, census statistics, driver's license data, and public corporate entity data. Defendants argue that (1) Plaintiffs cannot now present evidence of the citizenship of the class members because their Original Complaint does not allege any facts as to citizenship, and (2) the evidence provided by Plaintiffs does not suffice to prove the citizenship of the class members.

## A. Relevance of Original Pleadings

Defendants argue the court must disregard Plaintiffs' extrinsic evidence because Plaintiffs failed to plead the citizenship of the class members in their Original Complaint.[17]

---

[17]Enterprise and Oiltanking's Response, Docket Entry No. 27, pp. 9-10.

Plaintiffs argue that the court is not limited to the Complaint and may rely on extrinsic evidence.[18]

Defendants rely on <u>Coleman v. Estes Express Lines, Inc.</u>, 631 F.3d 1010, 1015 (9th Cir. 2011), to support their argument. <u>Coleman</u> involved CAFA's local controversy exception, three elements of which are that (1) the plaintiffs sought significant relief from a defendant (2) who is a citizen of the state where the suit is filed and (3) whose alleged conduct forms a significant basis for the class's claims. <u>Id.</u> at 1013. The Ninth Circuit held that CAFA's text for first and third elements—in particular, the words "sought" and "alleged"—meant they could only be satisfied from the face of the plaintiffs' complaint and were not facts for the district court to find. <u>Id.</u> at 1015-16. But critically the Ninth Circuit distinguished these elements from the element of the defendant's citizenship. For citizenship, the statute states the element as "[the defendant] is a citizen," using the word "is." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc). <u>Coleman</u> held that this word choice "indicates that an actual fact must be established." 631 F.3d at 1015. <u>Coleman</u> therefore teaches that some elements to CAFA exceptions must appear on the face of the complaint while others are facts the district court must find.

Like the element of defendant citizenship in <u>Coleman,</u> all three exceptions to CAFA have as an element that enough class members "are citizens of the State in which the action was

---

[18]Plaintiffs' Reply, Docket Entry No. 33, p. 12.

originally filed." 28 U.S.C. §§ 1332(d)(3); (d)(4)(A)(i)(I); (d)(4)(B). The statute's use of the verb "are" means the citizenship of class members is a fact that must be established rather than an allegation that must be pled. See Coleman, 631 F.3d at 1015. Because prospective class members' citizenship is a fact the court must find to determine the applicability of CAFA's exceptions, it may consider evidence submitted by the parties and is not limited to the pleadings. See In re Sprint Nextel Corp., 593 F.3d 669, 676 (7th Cir. 2010) (vacating a remand order pursuant to a CAFA exception but ordering the district court to permit the plaintiffs to present additional evidence to prove the proposed class members' citizenship). There is no basis in the text and Defendants cite no authority supporting their argument that facts to be proven under CAFA are limited to what the plaintiffs alleged in their Original Complaint.

**B. Evidence of Class Member Citizenship**

Plaintiffs have presented evidence that they contend establishes that more than two-thirds or at least more than one-third of the proposed class members are Texas citizens. That evidence includes:

- Information from the local property tax authority, the Harris County Appraisal District ("HCAD"), showing that 97.53% of the 10,271 parcels in the class area had Texas mailing addresses used for receipt of property tax bills;[19]

---

[19]Plaintiffs' Motion to Remand, Docket Entry No. 20, p. 15 & n.2; HCAD Information Spreadsheet, Exhibit 1 to Plaintiffs' Motion
(continued...)

- HCAD information that 1,707 of the parcels had been bought in the two years prior to the filing of the lawsuits, indicated that there are 1,707 former owners in the class;[20]

- A random sample of 5% of the current HCAD parcel owners of which 87.16% hold Texas driver's licenses matching the HCAD listing or are Texas government or business entities;[21]

- Affidavits from the Plaintiff representatives and five other potential class members stating that they are residents of Texas and intend to remain in Texas;[22]

- U.S. Census data showing that the Houston metropolitan area and Harris County grew by 1.3% and 0.7% respectively between July of 2017 and July of 2018 despite the widespread flooding caused by Hurricane Harvey in August of 2017;[23] and

---

[19](...continued)
to Remand, Docket Entry No. 20-2; Affidavit of Kyle K. Wittenbraker, Docket Entry No. 20-4, pp. 3-4 (explaining the source and method used to create the spreadsheet).

[20]Spreadsheet Including Date Current Owner Acquired Property, Exhibit 14 to Plaintiffs' Reply, Docket Entry No. 33-3; Second Affidavit of Kyle K. Wittenbraker, Exhibit 13 to Plaintiffs' Reply, Docket Entry No. 33-2, pp. 4-5 ¶ 12 (explaining how the spreadsheet can be used to calculate the 1,707 figure).

[21]Spreadsheet with 5% Sample, Exhibit 16 to Plaintiffs' Reply, Docket Entry No. 33-5; Texas Driver Reports 1, Exhibit 17 to Plaintiffs' Reply, Docket Entry Nos. 34-2, 34-3; Texas Business Organizations Inquiries, Exhibit 18 to Plaintiffs' Reply, Docket Entry No. 33-7; Second Affidavit of Kyle K. Wittenbraker, Exhibit 13 to Plaintiffs' Reply, Docket Entry No. 33-2, pp. 5-6 ¶¶ 17-21 (explaining the source and method used to create the spreadsheet).

[22]Affidavits of Alejandro Gonzalez, Anthony Thompson, Don Weston Dorrell, James Barlow, Janice Joseph, Mary Evans, Royal Ursin, and Steven Nash, Exhibit 15 to Plaintiffs' Reply, Docket Entry No. 33-4.

[23]U.S. Census Bureau Estimates of Resident Population Change and Rankings, Exhibit 21 to Plaintiffs' Reply, Docket Entry No. 33-10.

- Survey data published by the Kaiser Family Foundation showing that only 8% of Texas residents who had evacuated due to Hurricane Harvey had not returned to their homes by August of 2018.[24]

Defendants argue this evidence does not suffice to establish class member citizenship for the purposes of CAFA.

1. Evidentiary Standard for Class Citizenship Under CAFA

Federal courts generally must make jurisdictional determinations based on readily available information. Hollinger v. Home State Mutual Insurance Co., 654 F.3d 564, 570 (5th Cir. 2011). The standard for establishing the domicile of a large class of plaintiffs to determine CAFA jurisdiction requires practicality and reasonableness. Preston II, 485 F.3d at 816. "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." Hollinger, 654 F.3d at 570-71.

Exceptions to CAFA jurisdiction are intended to be narrow, and the court must resolve doubts in favor of exercising jurisdiction. Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp., 810 F.3d 335, 337 (5th Cir. 2016). The party objecting to CAFA jurisdiction bears the burden of proving the citizenship status of the plaintiff class members by a preponderance of the evidence. Hollinger, 654 F.3d at 571. For the purposes of diversity

---

[24]One Year After the Storm: Texas Gulf Coast Residents' Views and Experiences with Hurricane Harvey Recovery, Exhibit 22 to Plaintiffs' Reply, Docket Entry No. 33-11, p. 18.

jurisdiction, United States citizens are citizens of the states in which they are domiciled. Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). Domicile in turn depends on residence and intention to remain in a state. Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 485 F.3d 793, 798 (5th Cir. 2007) ("Preston I"). Once domicile is established, it presumptively continues unless rebutted by evidence of change. Id.

Evidence of a person's place of residence is prima facie proof of his domicile. Hollinger, 654 F.3d at 571 (citing Preston I, 485 F.3d at 799). Common sense and practicality allow the court to consider evidence such as census data and other statistics that may not necessarily be specific to the class in determining the residencies of a large plaintiff class. Id. at 572. The court may make common-sense presumptions to determine whether the evidence establishes the citizenship of the parties, but cannot rely on guesswork in the absence of evidence. Hollinger, 654 F.3d at 573; In re Sprint Nextel Corp., 593 F.3d at 674.

2. Application

The class consists of 11,978 potential members, 10,271 who own parcels in the class area plus 1,707 former owners. Of the 10,271 parcels, 10,017 owners listed Texas mailing addresses for the receipt of property tax bills with HCAD. Taken alone, mailing addresses do not suffice to establish residency. Preston I, 485 F.3d at 799. The combination of property ownership and a Texas billing address, however, has some probative value. See Hollinger,

-10-

654 F.3d at 573. Nevertheless, the court concludes that this evidence is not sufficient to carry Plaintiffs' burden because it requires guesswork as to the proportion of the 10,017 owners with Texas billing addresses who may not be Texas residents. See In re Sprint Nextel Corp., 593 F.3d. at 674. In particular, it does not identify how many of the parcels are non-residential or vacant, how many parcels might be owned by the same owner, or how many parcels might be owned by out-of-state owners who nonetheless list a Texas billing address.

More specific and compelling is Plaintiffs' random sample of the HCAD list of owners. Using a randomly generated 5% sample of the 10,271 parcels, Plaintiffs matched individual owners listed by HCAD with Texas driver's licenses and entity owners with public data from the Texas Secretary of State.[25] Only 66 of the sample of 514 parcels, or 12.84%, are owned by individuals who did not hold Texas driver's licenses or entities who were not formed in Texas and do not have their principal place of business here.[26] 87.16% of the parcels are owned by individual holders of Texas driver's licenses, Texas business organizations, or Texas government entities.[27] The court concludes that evidence that these

---

[25] Second Affidavit of Kyle K. Wittenbraker, Exhibit 13 to Plaintiffs' Reply, Docket Entry No. 33-2, pp. 5-6 ¶¶ 17-21.

[26] Id. at 6 ¶ 21.

[27] Id.

individuals own property in Texas and hold a Texas driver's license indicates Texas residency.

Individual class members' residence is prima facie evidence that they are domiciled in Texas. Hollinger, 654 F.3d at 571. Texas driver's licenses are also probative of an intent to remain in Texas, as a person is unlikely to obtain a driver's license in a state he does not intend to remain in for some time. Accord id. at 574 (concluding that a person registering and insuring a vehicle in Texas was probative of an intent to remain). This evidence is supplemented by affidavits from the named plaintiffs and five possible class members stating that they reside in Texas and intend to remain. See Preston II, 485 F.3d at 817 (holding that affidavits of eight members of a large proposed class stating their residence and intent to remain were probative as to the citizenship of the class as a whole in the absence of contradictory objective evidence). The court concludes that Plaintiffs have established by a preponderance of the evidence that the individual HCAD-listed property owners who hold Texas driver's licenses are domiciled in Texas.

Defendants object that the random sample is too small to be probative. The court disagrees; a random sample of 514 parcels consisting of 5% of the total population of HCAD addresses is large enough both in absolute size and compared to the overall population to have significant probative value. See Payton v. Entergy Corp., Civil Action No. 12-2452, 2013 WL 5722712, at *9-10, *14 (E.D. La.

Oct. 21, 2013) (finding an expert's survey consisting of a sample of 500 of a proposed class of over 500,000 customers was "significantly more evidence" than needed to prove the citizenship of the overall class). Matching data from different databases can be costly and time consuming. Plaintiffs' statistical approach to show the proportions of the types of owners in the prospective class is a reasonable and practical method to prove their state citizenship.

Defendants also object that Texas driver's licenses are not probative as to state citizenship because foreign nationals may hold them. See Tex. Transp. Code § 521.0305 (permitting the Texas Department of Safety to issue drivers' licenses to citizens of foreign countries); see also Coury, 85 F.3d at 248 (holding that a state's citizens are citizens of the United States domiciled in that state). Defendants argue that the court should disregard the driver's license data absent a showing of the proportion who are United States citizens. The court may, however, take judicial notice of the most recent public data from the United States Census American Community Survey, which estimates that 86.67% of adults in Texas and 78.93% of adults in Harris County are United States citizens.[28] See Fed. R. Evid. 201(c)(1); Hollinger, 654 F.3d at

---

[28]See United States Census Bureau, American Community Survey, 2017: American Community 5-Year Estimates Data Profiles, https://www.census.gov/acs/www/data/data-tables-and-tools/data-profiles/ (estimating that 17,512,737 and 2,605,043 United States citizen adults reside in Texas and Harris County respectively out of a total of 20,206,495 and 3,300,460 adult residents).

571-72 ("[C]ensus data is an appropriate and frequent subject of judicial notice."). While not specific to the property owners in this case, this type of statistical information may be reasonably applied to a prospective class for the purpose of determining jurisdiction. Id. at 572. In order to be as conservative as possible and to avoid speculation, the court will apply the percentages from the census data to the 87.16% of the owners Plaintiffs have shown either hold Texas driver's licenses or are Texas entities to determine the proportion who are likely Texas citizens. Combining these figures produces a reasonable and practical estimate that 68.80% to 75.54% of the current property owners listed by HCAD are either Texas entities or are individuals who are domiciled in Texas and are citizens of the United States.[29] Accordingly, Plaintiffs' evidence is sufficient to establish by a preponderance of the evidence that 68.80% to 75.54% of the owners listed by HCAD are Texas citizens.

Plaintiffs' random sample does not, however, include the 1,707 former owners who are also part of the class but whose names and addresses are not on the HCAD list. The only evidence as to the former owners is that they previously owned property in Texas, which alone does not suffice to prove citizenship. Accounting for the former owners reduces the proportion of the total class for

---

[29] 0.8716 multiplied by 0.8667 equals 0.7554, and multiplied by 0.7893 equals 0.6880.

whom there is significant evidence of Texas citizenship to 59.00% to 64.77% of the total proposed class of 11,978 members.[30] Accordingly, Plaintiffs have not shown by a preponderance of the evidence that at least two-thirds of the proposed class are citizens of Texas as required for CAFA's mandatory remand provisions, but Plaintiffs have satisfied the one-third threshold that permits discretionary remand. 28 U.S.C. §§ 1332(d)(3), (d)(4).

## C. Discretionary Remand

It is not disputed that the Defendants are Texas citizens.[31] Because Plaintiffs have shown that greater than one-third but less than two-thirds of the proposed class members are also Texas citizens, CAFA authorizes the court to decline jurisdiction in the interests of justice and looking at the totality of the circumstances. 28 U.S.C. § 1332(d)(3). The court must consider six statutory factors in deciding whether discretionary remand is appropriate. Id.

The first factor is "whether the claims asserted involve matters of national or interstate interest." Id. § 1332(d)(3)(A).

---

[30]Multiplying 68.80% and 75.54% to the 10,271 unique parcels produces 7,066.45 to 7,758.71 parcels owned by Texas citizens. Dividing these by the total number of potential plaintiffs including former owners, 11,978, produces .5900 and .6477, or 59.00% and 64.77%.

[31]See Motion to Remand, Docket Entry No. 20, pp. 17-18.

Defendants argue that the case centers on pipeline construction and safety, which is a matter of national and interstate interest because pipelines are essential in interstate commerce and regulated by federal law.[32] But "[u]nder CAFA, the terms local and national connote whether the interests of justice would be violated by a state court exercising jurisdiction over a large number of out-of-state citizens and applying the laws of other states." Preston II, 485 F.3d at 822. In Preston II, for example, the defendants opposing remand under CAFA argued that "the evacuation of medical and other facilities during disasters" was an issue of national concern. Id. The Fifth Circuit rejected that argument not because it disagreed that evacuation during disasters could be a matter of national interest but because that fact did not bear on whether that particular action was a matter of national interest for the purposes of CAFA. Id. While oil and gas pipeline safety may generally be of national and interstate concern, that does not mean that this case is necessarily of national or interstate interest. This case involves Texas Defendants' construction of a local Texas pipeline, which is alleged to have diverted rainwater and caused damages to Texas properties nearby owned mostly by Texas citizens. These facts reflect a local controversy that "does not affect national interest as contemplated under the statute." See id. The first factor therefore weighs in favor of remand.

---

[32]Enterprise and Oiltankings' Response, Docket Entry No. 27, pp. 22-23.

The second factor is "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States." 28 U.S.C. § 1332(d)(3)(B). Plaintiffs allege only Texas state-law claims, and Defendants have not argued that other state law applies. The third factor is "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;" if so, remand is disfavored. Id. § 1332(d)(3)(C); see Preston II, 485 F.3d at 822-23. There is no indication Plaintiffs intentionally pled the case to avoid federal jurisdiction. The second and third factors both weigh in favor of remand.

The fourth factor is "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants." 28 U.S.C. § 1332(d)(3)(D). The alleged wrongful conduct, alleged damaged properties, Defendants and the majority of the potential class members, and the location of the alleged injuries have a distinct nexus in the state of Texas, where the claim was originally brought. The fifth factor requires weighing of the proportion of the potential class members who are citizens of the state in which the action was brought against the proportion who are citizens of other states. Id. at § 1332(d)(3)(E). Plaintiffs' evidence shows that over half of the potential class members are Texas citizens. The fourth and fifth factors both weigh in favor of remand.

The final factor is "whether, during the 3-year period preceding the filing of [the] class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." Id. at § 1332(d)(3)(F). Because there is no evidence that any such similar class actions have been filed here, this factor weighs in favor of remand.

Defendants are Texas citizens, greater than one-third but less than two-thirds of the proposed plaintiff class members are Texas citizens, and all of the discretionary remand factors weigh in favor of remand. Accordingly, the court concludes it should decline to exercise jurisdiction under CAFA and remand the case to state court. Because the court declines to exercise jurisdiction over Plaintiffs' claims, Defendants' 12(b)(6) motions to dismiss will be denied as moot.

### III. Conclusion and Order

For the reasons stated above, Plaintiffs Mary Evans and Don Weston Dorrell's, Individually and as Representatives of a Class, Motion to Remand (Docket Entry No. 20) is **GRANTED**. Defendant CenterPoint Energy Houston Electric, LLC's FRCP 12(b)(6) Motion to Dismiss (Docket Entry No. 2) and Defendants Enterprise Products Partners, LP and Oiltanking Partners, LP's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 3) are **DENIED AS MOOT**.

This action is **REMANDED** to the 165th District Court of Harris County, Texas. The Clerk will promptly deliver a copy of this Memorandum Opinion and Order to the District Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this 12th day of December, 2019.

--------------------------------------------------
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE